IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| WICKER'S FOOD PRODUCTS, INC., | : | Civil Action No. _____ |
| Plaintiff, | : | |
| v. | : | |
| WICKER'S TX LLC, | : | JURY TRIAL DEMANDED |
| Defendant. | : | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Wicker's Food Products, Inc. ("Plaintiff"), by and through its attorneys, Locke Lord LLP and Riezman Berger, P.C., for its Complaint against Defendant Wicker's TX LLC ("Defendant"), alleges, on knowledge as to its own actions, and otherwise upon information and belief, as follows:

### PRELIMINARY STATEMENT

1. This is an action for infringement of Plaintiff's federally-registered trademarks for WICKER'S under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), and for unfair competition and false designation of origin under Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a), both arising from the Defendant's unauthorized use of the mark WICKER'S in connection with the manufacture, distribution, marketing, advertising, promotion, offering for sale, and/or sale of Defendant's goods.

2. Plaintiff seeks injunctive and monetary relief.

### PARTIES

3. Plaintiff is a Missouri corporation with its principal place of business in Hornersville, Missouri. Plaintiff is a pioneer in the barbecue sauce industry, first launching a

barbecue stand in 1947, at the beginning of the automobile boom, and then bottling the sauce that was loved by servicemen or traveling motorists so that they could purchase it in grocery stores or by mail order back home. In the intervening 70 plus years, the art of barbecuing has become not just a rural or western culinary custom. Every family now owns a barbecue grill and barbecue sauces, and glazes, are a staple of most Americans' condiment cabinets. Although major food brands, such as Kraft or Heinz, now produce barbecue sauce, the attraction of the "retro," "small batch" barbecue sauce is back in vogue.

4. Upon information and belief, Defendant is a Texas limited liability company, with its principal place of business in Weatherford, Texas. Upon information and belief, Defendant is the manufacturer of barbecue sauces including a mesquite smoked jalapeno glaze, available by mail order and in stores in Texas and New Mexico. Defendant may be served by serving its registered agent, George W. Wicker, 350 Mark Layne Rd., Weatherford, TX 76088.

## JURISDICTION

5. This court has jurisdiction over this action pursuant to 15 U.S.C. §1121, 28 U.S.C. §§1331, and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. §1367.

## VENUE

6. Venue is proper in this district under 28 U.S.C. §§ 124(a)(2) and 1391(b)(1), in that Defendant resides in this district.

## FACTS

A. Plaintiff and its WICKER'S Mark

7. Plaintiff is a manufacturer of sauces for barbecuing.

8. Wicker's sauces, which have been sold since 1947, are a classic American food product. Originally sold in a two-state area consisting of Missouri and Arkansas, its national

2

fame quickly grew, due in part to the presence of nearby Blytheville Air Force Base, a key base from 1955 until the end of the cold war in 1992. When an airman would get stationed elsewhere or retire from the force, he would remember the taste of Wicker's and seek it out by mail order. Wicker's became a pioneer of the use of the toll-free "1-800" number, still under patent by AT&T and a very expensive service at the time, in order to accommodate cross-country ordering. Consequently, Wicker's was noticed by a Harper & Row author writing about fine foods in 1984, which received publicity from Massachusetts to California:

> Newspapers by Ancestry
>
> Times-Advocate (Escondido, California) · 19 Aug 1987, Wed · Page 50
> Downloaded on Nov 28, 2022
>
> **Great food is just a phone call away**
> Boston Globe
>
> BOSTON, Mass. — Allison Engel, author of "Food Finds" (Harper & Row, 1984), recently has been letting her fingers do the walking in her continued efforts to scout out unusually good sources of food.
>
> Engel says her fingers have marched through AT&T's Toll-Free 800 Consumer Directory ($9.95 from your nearest AT&T telephone center) and she has been delighted to find everything from a barbecue sauce from Hornersville, Mo., (population 742) to fresh caviar that can be flown right to her doorstep.
>
> Engel says anyone can pick up the telephone and call 1-800-847-0032 to order Wicker's barbecue sauce ("thin, more like a marinade — a whole bottle has only 40 calories"). And there are two caviar companies with toll-free service: Caviar Direct (1-800-472-4456) and Caviar Express (1-800-544-2266).

9.  Wicker's still maintains this phone number today (1-800-847-0032) and in the 1990's added a fax number (1-573-737-2113). Of course, with the dawn of the new millennium came the internet. At first, it appeared that "dot com" product domain names would bypass the distribution channels of existing businesses. But then the dot com "bubble" burst. Wicker's was quick to react and registered its own domain name on July 27, 2000, and went live with its own

3

website the next year, containing its "good old" 800 number, fax number, and adding an e-mail address (wickers@vip1.net) to further facilitate nationwide ordering.

10. In addition to the nationwide sales presence afforded by the technologies of the last 40 years, Wicker's has had a continuous presence in the traditional channel of trade, i.e. grocery stores.

11. Two recent trends have made the WICKER'S trademark more popular than ever. First, although it had been assumed that the big brands would take over the "condiment and sauces" and "cooking and baking" aisles of supermarkets, when it came to barbecue sauces, consumers wanted brands that had ties to real barbecue stands, as does Wicker's. Second, the low-carb diet craze has made Wicker's even more popular because of its natural low-sugar content.

12. Plaintiff is the owner of valid and subsisting United States Trademark Registration Nos. 2294478 and 1226822 on the Principal Register in the United States Patent and Trademark Office for the trademark WICKER'S (hereinafter "WICKER'S Mark") for sauces for barbecuing, which have become incontestable within the meaning of Section 15 of the Lanham Act, 15 U.S.C. § 1065. The chart below represents the details of Plaintiff's trademarks as can be confirmed and verified by using the search tools at the United States Patent and Trademark Office website (https://tess2.uspto.gov):

| Registration Date | Registration Number | Class Number | Mark Goods and Services | Incontestable? (Y/N) |
|---|---|---|---|---|
| 01/28/2014 | 2294478 | 30 | WICKERS "Sauce for barbecuing" | Y |
| 02/08/1983 (renewed 12/12/2022) | 1226822 | 30 | *Wicker's* "Sauce for barbecuing" | Y |

13. Plaintiff has used the WICKER'S Mark in commerce throughout the United States continuously since 1947 in connection with the manufacture of barbecue sauces. This is a representative array of bottles of Wicker's:



14. As a result of its widespread, continuous, and exclusive use of the WICKER'S Mark to identify its barbecue sauce and Plaintiff as their source, Plaintiff owns valid and subsisting federal statutory and common law rights to the WICKER'S Mark.

15. Plaintiff's WICKER'S Mark is distinctive to both the consuming public and Plaintiff's trade.

16. Plaintiff has expended substantial time, money, and resources marketing, advertising, and promoting the barbecue sauce sold under the WICKER'S Mark as demonstrated above.

17. Plaintiff sells the barbecue sauce under the WICKER'S Mark through retail outlets, specialty stores, internet and phone orders.

18. Sales of barbecue sauces under the WICKER'S Mark have been continuous, widespread and substantial.

5

19. Plaintiff offers and sells its barbecue sauce under its WICKER'S Mark to a variety of consumers: from cooks that have a special recipe involving Wickers, to "Weekend Warriors" combing the grocery store aisles prior to a weekend barbecue, to those doing an internet search for the name WICKER'S as a brand they remember from the old days, or a brand they saw featured in a food review.

20. The barbecue sauce Plaintiff offers under the WICKER'S Mark is of high quality, honed through strict quality control over eight decades.

21. As a result of Plaintiff's expenditures and efforts, the WICKER'S Mark has come to signify the high quality of the barbecue sauce designated by the WICKER'S Mark, and acquired incalculable distinction, reputation, and goodwill belonging exclusively to Plaintiff.

22. Plaintiff's WICKER'S Mark and the barbecue sauce offered thereunder have received significant unsolicited coverage in various media, including the Harper& Row book mentioned above and numerous news articles.

B. Defendant's Unlawful Activities

23. Upon information and belief, Defendant is engaged in manufacturing barbecue sauce.

24. Without Plaintiff's authorization, and upon information and belief, beginning at least as early as June 13, 2020 (long after Plaintiff acquired protectable exclusive rights in its WICKER'S Mark), Defendant adopted and began using in US commerce, on its sauce for barbecuing, a mark virtually identical to Plaintiff's WICKER'S Mark, to wit:



and has filed to register BIG WICK'S (stylized) for "food glazing preparations comprised primarily of fruit and/or fruit pectin for use in cooking and baking:"



(hereinafter collectively the "Infringing Marks").

25. The Infringing marks adopted and used by Defendant, and proposed to be adopted and used, are confusingly similar to Plaintiff's WICKER'S Mark.

26. Upon information and belief, Defendant has been engaged in the manufacture, advertising, promotion, offering for sale, and sale of barbecue sauce using the Infringing mark WICKER'S TX in Texas, New Mexico and other various places through social media. Upon information and belief, Defendant is close to finalizing a deal with Kroger's which is in 35 states.

27. Upon information and belief, the barbecue sauce Defendant has manufactured, marketed, advertised, promoted, offered for sale, and sold under the Infringing Marks is closely related and competitive, in that both are used in the preparation or seasoning of meats and are often located in the same aisle of a grocery store (where customers are selecting groceries with great dispatch to complete their shopping chore).

28. On September 30, 2022 Defendant posted a video to TikTok (and perhaps to other social media platforms) which perfectly illustrates the "likelihood of confusion" problem. In this video, Defendant follows the delivery of a box of Defendant's sauce to a new store. The product

WICKER'S TX (stylized) is shown being placed on the shelf next to the sauce ALLEGRO:



(A screenshot of Defendant's TikTok video posting is archived on the internet here: https://archive.is/eC1Ls. However the video has been saved in a dropbox for the convenience of the Court: https://www.dropbox.com/s/bw1odc3lsmjnkis/wickerstx_1668703468296233.mp4?dl=0.) That Plaintiff's Wicker's brand is often placed alongside ALLEGRO is illustrated here (see bottom shelf):



To add insult to injury, the video shows one of Defendant's bottles of sauce being brought to the checkout counter and then scanned in erroneously or mistakenly as *Plaintiffs'* Wickers Mesquite brand!:



29. The mis-scanning incident documented by Defendant is illustrative of actual industry confusion which is probative of consumer confusion.

30. The mis-scanning incident documented by Defendant served to put Defendant on notice that the claims of Plaintiff's August 2, 2022 cease and desist letter were true (see below).

31. Both Defendant's current mark, and the proposed or possibly already in-use mark, contain WICKER'S, or the diminutive WICK'S as a dominant element and thus will cause confusion in any grocery store, but especially when placed alongside mutual competitor ALLEGRO.

32. Furthermore, that Defendant's product is intended for use as a liquid preparation for barbecuing meat is clearly shown by these examples of Defendant's internet promotions:

10



04/08/2022
Great looking rack of ribs by Rory Goodwin - Cullman, Alabama!

#wickerstx #mesquite #smoked #jalapeno



33. Upon information and belief, Defendant has manufactured, marketed, advertised, promoted, offered for sale, and sold its goods under the Infringing Marks through retail outlets, specialty stores, farmer's markets and the internet.

34. Upon information and belief, Defendant has marketed, advertised, and promoted its goods under the Infringing Marks through social media and the internet as does Plaintiff.

35. Upon information and belief, Defendant offers and sells its goods under the Infringing Marks to consumers searching for meat preparations or condiments as does Plaintiff.

36. Upon information and belief, the goods Defendant offers under the Infringing Marks are highly spicy (containing jalapeno) and will surprise and confuse the consumer who mistakenly buys them, thinking they are the milder WICKER'S.

37. On August 2, 2022, Plaintiff's counsel sent a cease-and-desist letter to Defendant objecting to Defendant's use of the Infringing Marks. Attached hereto as Exhibit 1 is a true and correct copy of Plaintiff's counsel's August 2, 2022, cease-and-desist letter to Defendant.

38. To date, Plaintiff has no evidence that Defendant has complied with the demands set out in Plaintiff's counsel's cease-and-desist letter. Defendant did suggest BIG WICK'S

(stylized) as a compromise, which Plaintiff informed them was still infringing, inasmuch as BIG WICK'S is a diminutive on the order of McDonald's BIG MAC and inasmuch as bottles on a shelf are frequently turned slightly where often only the WICK'S may appear to the shopper and, especially in proximity to ALLEGRO, the wrong brand might be chosen.

39. Defendant nonetheless continues to sell sauces solely under the labeling of WICKERS TX (stylized) and features same as the sole product depicted on its website's home page, to wit (wickerstx.com redirected to bigwickstx.com, accessed January 2, 2023):



40. Defendant's infringing acts as alleged herein have caused and are likely to cause confusion, mistake, and deception among the relevant consuming public as to the source or origin of the Defendant's goods and have and are likely to deceive the relevant consuming public

into believing, mistakenly, that Defendant's goods originate from, are associated or affiliated with, or otherwise authorized by Plaintiff.

41. Upon information and belief, Defendant's acts are willful with the deliberate intent to trade on the goodwill of Plaintiff's WICKER'S Mark, cause confusion and deception in the marketplace, and divert potential sales of Plaintiff's barbecue sauce to the Defendant.

42. Defendant's acts are causing, and unless restrained, will continue to cause, or may cause, in the case of BIG WICK'S, damage and immediate irreparable harm to Plaintiff and to its valuable reputation and goodwill with the consuming public for which Plaintiff has no adequate remedy at law.

## COUNT ONE (Federal Trademark Infringement)

43. Plaintiff reiterates and realleges paragraphs 1 through 42 hereof, as if fully set forth herein.

44. Defendant's unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's goods, and is likely to cause consumers to believe, contrary to fact, that Defendant's goods are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff. Defendant's conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

45. Upon information and belief, Defendant has committed the foregoing acts of infringement with full knowledge of Plaintiff's prior rights in the WICKER'S Mark and with the willful intent to cause confusion and trade on Plaintiff's goodwill.

46. Defendant's conduct is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public unless enjoined by this court. Plaintiff has no adequate remedy at law.

47. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

### COUNT TWO (Federal Unfair Competition)

48. Plaintiff reiterates and realleges paragraphs 1 through 42 hereof, as if fully set forth herein.

49. Defendant's unauthorized use in commerce of the Infringing Marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendant's goods, and is likely to cause consumers to believe, contrary to fact, that Defendant's goods are sold, authorized, endorsed, or sponsored by Plaintiff, or that Defendant is in some way affiliated with or sponsored by Plaintiff.

50. Defendant's unauthorized use in commerce of the Infringing Marks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

51. Upon information and belief, Defendant's conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendant with Plaintiff.

52. Defendant's conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

53. Defendant's conduct as alleged herein is causing immediate and irreparable harm and injury to Plaintiff, and to its goodwill and reputation, and will continue to both damage Plaintiff and confuse the public through the unconscionable shelf problem cited above, unless enjoined by this court. Plaintiff has no adequate remedy at law.

54. Plaintiff is entitled to, among other relief, injunctive relief and an award of actual damages, Defendant's profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with pre-judgment and post-judgment interest.

WHEREFORE, Plaintiff requests judgment against Defendant as follows:

1. That Defendant has violated Section 32 of the Lanham Act (15 U.S.C. § 1114); and Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)).

2. Granting an injunction permanently enjoining the Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and all of those in active concert and participation with any of the foregoing persons and entities who receive actual notice of the Court's order by personal service or otherwise from:

   a. manufacturing, providing, selling, marketing, advertising, promoting, or authorizing any third party to manufacture, provide, sell, market, advertise or promote any goods or services bearing the mark WICKER'S or BIG WICK'S or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of Plaintiff's WICKER'S mark;

   b. engaging in any activity that infringes Plaintiff's rights in its WICKER'S mark, including the posting or leaving up of social media containing the Infringing Marks;

   c. engaging in any activity constituting unfair competition with Plaintiff;

   d. making or displaying any statement, representation, or depiction that is likely to lead the public or the trade to believe that (i) Defendant's goods are in any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or (ii) Plaintiff's goods are in

any manner approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Defendant;

 e. using or authorizing any third party to use in connection with any business, goods, or services any false description, false representation, or false designation of origin, or any marks, names, words, symbols, devices, or trade dress that falsely associate such business, goods and/or services with Plaintiff or tend to do so;

 f. registering or applying to register any trademark, service mark, domain name, trade name, or other source identifier or symbol of origin consisting of or incorporating the mark WICKER'S or BIG WICK'S or any other mark that infringes or is likely to be confused with Plaintiff's WICKER'S mark, or any goods or services of Plaintiff, or Plaintiff as their source; and

 g. aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (a) through (f).

3. Granting such other and further relief as the Court may deem proper to prevent the public and trade from deriving the false impression that any goods or services manufactured, sold, distributed, licensed, marketed, advertised, promoted, or otherwise offered or circulated by Defendant are in any way approved, endorsed, licensed, sponsored, authorized, or franchised by or associated, affiliated, or otherwise connected with Plaintiff or constitute or are connected with Plaintiff's goods.

4. Directing Defendant to immediately cease all manufacture, display, distribution, marketing, advertising, promotion, sale, offer for sale and/or use of any and all packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials that feature or bear any designation or mark incorporating the mark WICKER'S or BIG WICK'S or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable

imitation of Plaintiff's WICKER'S mark, and to direct all distributors, retailers, wholesalers, and other individuals and establishments wherever located in the United States that distribute, advertise, promote, sell, or offer for sale Defendant's goods or services to cease forthwith the display, distribution, marketing, advertising, promotion, sale, and/or offering for sale of any and all goods, services, packaging, labels, catalogs, shopping bags, containers, advertisements, signs, displays, and other materials featuring or bearing the mark WICKER'S or BIG WICK'S or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of the Plaintiff's WICKER'S mark, and to immediately remove them from public access and view.

5. Directing that Defendant recall and deliver up for destruction all goods, packaging, containers, advertisements, promotions, signs, displays, and related materials incorporating or bearing the mark WICKER'S or any other mark that is a counterfeit, copy, confusingly similar variation, or colorable imitation of Plaintiff's WICKER'S mark.

6. Directing Defendant to formally abandon with prejudice any and all of its applications to register the mark BIG WICK'S or any mark consisting of, incorporating, or containing Plaintiff's WICKER'S mark or any counterfeit, copy, confusingly similar variation, or colorable imitation thereof on any state or federal trademark registry.

7. Directing, pursuant to Section 35(a) of the Lanham Act (15 U.S.C. § 1116(a), Defendant to file with the court and serve upon Plaintiff's counsel within thirty (30) days after service on Defendant of an injunction in this action, or such extended period as the court may direct, a report in writing under oath, setting forth in detail the manner and form in which Defendant has complied therewith.

8. Awarding Plaintiff an amount up to three times the amount of its actual damages, in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)).

9. Directing that Defendant account to and pay over to Plaintiff all profits realized by its wrongful acts in accordance with Section 35(a) of the Lanham Act (15 U.S.C. § 1117(a)), enhanced as appropriate to compensate Plaintiff for the damages caused thereby.

10. Awarding Plaintiff punitive and exemplary damages as the court finds appropriate to deter any future willful infringement.

11. Declaring that this is an exceptional case pursuant to Section 35(a) of the Lanham Act and awarding Plaintiff its costs and reasonable attorneys' fees thereunder (15 U.S.C. § 1117(a)).

12. Awarding Plaintiff interest, including prejudgment and post-judgment interest, on the foregoing sums.

13. Awarding such other and further relief as the Court deems just and proper.

Dated: 01/20/2023                               Respectfully submitted,

                                              LOCKE LORD LLP

                                              By:/s/ Vincent J. Hess
                                                 Vincent J. Hess
                                                 Texas Bar No. 09549417
                                                 2200 Ross Avenue, Suite 2800
                                                 Dallas, Texas 75201
                                                 Telephone: (214) 740-8000
                                                 Facsimile:  (214) 740-8800
                                                 E-Mail:  vhess@lockelord.com

Dated: 01/10/2023                               Respectfully submitted,

                                              RIEZMAN BERGER, P.C.

                                              By:/s/ Randall D. Grady
                                                 Randall D. Grady
                                                 7700 Bonhomme Ave., 7th Floor
                                                 St. Louis, Missouri 63105
                                                 Telephone: (314) 727-0101
                                                 Facsimile: (314) 727-6458
                                                 E-Mail: grady@riezmanberger.com
                                                 (PRO HAC VICE PENDING)